UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-10270-RGS

| | |
|---|---|
| DEPUY SPINE HOLDING CORP., As It Is General Partner Of DEPUY SPINE SALES LIMITED PARTNERSHIP, ) ) ) ) Plaintiff, ) ) v. ) ) JOHN MIEYR and TRINITY SPINE, INC., ) ) ) Defendants. ) | DECLARATION OF JACK CARLSON |

I, Jack Carlson, state on oath as follows:

1. I am the Central Area Vice-President of DePuy Spine, Inc. ("DePuy Spine"), the limited partner of DePuy Spine Sales Limited Partnership ("DePuy Partnership").

### Training and Confidential Information

2. I am personally familiar with John Mieyr, who was previously an employee of DePuy Spine and a distributor of DePuy Spine products pursuant to a written agreement with DePuy Partnership.

3. As an employee and distributor of DePuy Spine products, Mieyr received ongoing training from DePuy Spine. Mieyr was required to attend annual (or more frequent) training seminars and to participate in regular computer training sessions.

4. As an employee and distributor of DePuy Spine Products, Mieyr received confidential information about sales quotas, targeted areas of growth, perceived weaknesses, and product development. This confidential information would be of great use to competitors of DePuy Spine.

### Sales To Dr. Halliday

5. In approximately October 2004, I became aware that Dr. Andrea Halliday, a surgeon in the Fort Worth, Texas area, who uses DePuy Spine spinal implant products, wished to perform certain spinal surgeries at Baylor All Saints Hospital in Fort Worth. Dr. Halliday had previously performed surgeries at almost exclusively at Harris Hospital in Forth Worth, where she worked with an independent distributor for DePuy Partnership, Rob Walker.

6. Dr. Halliday understood that John Mieyr was an independent Sales Representative for DePuy Spine products at Baylor All Saints Hospital. Dr. Halliday, however, told me that she did not wish to work with Mieyr because she believed him to be untruthful.

7. I informed John Mieyr of the situation, including Dr. Halliday's comments, and attempted to fashion a solution to the problem.

8. In a November 29, 2004 e-mail to Mieyr, after some discussions, I proposed that Susan Brownell, the sales representative for whom Rob Walker worked, receive credit for Dr. Halliday's surgeries at Baylor All Saints Hospital and that Brownell pay Walker. In response, also on November 29, 2004, Mieyr e-mailed to me that "[u]ntil Dec 31 I will need to be paying Rob Walker and the revenue will need to be credited to territory 572 [Mieyr's territory]. Anything less is a blatant breach of contract."

9. On November 29, 2004, by e-mail to Mieyr, I agreed to Mieyr's proposals. Mieyr, not Brownell, received credit for Dr. Halliday's surgeries at Baylor All Saints Hospital and Mieyr, not Brownell, paid Rob Walker his commissions for those surgeries. Mieyr never provided me (or, to my knowledge, any representative of DePuy Partnership or DePuy Spine)

with any written notice that he considered these transactions with Dr. Halliday, for which Mieyr was compensated as he requested, to be a breach of the Agreement.

10.   In my discussions about this matter with Mieyr, he was concerned primarily that he receive his commission at the higher 25% bonus rate, rather than at the standard 12% commission rate. I assured him that he would receive the bonus rate if his quota had been met and he was otherwise qualified for the bonus category, in accordance with the terms of the Agreement. As it turned out, Mieyr was paid at the 25% bonus commission rate on all but two of Dr. Halliday's surgeries, which occurred when he had not yet met his quota and so received the standard commission rate. Copies of e-mail exchanges between me and Mieyr about this matter are attached hereto as Exhibit A. Although I indicated that Mieyr's sales quota would increase in the amount of these sales to Dr. Halliday, Mieyr's quota in fact remained the same.

### Irreparable Harm Caused By Mieyr's Conduct Upon Termination

11.   In December 2004, I informed Mieyr that DePuy Partnership did not wish to enter into a new Sales Representative Agreement with him or Trinity Spine, Inc. I spoke to and e-mailed Mieyr about the best way to convey this information to DePuy Partnership's customers in order to preserve good will and insure a smooth transition. *See* Exhibit B.

12.   Mieyr has instead acted deliberately to harm DePuy Partnership's goodwill. Mieyr's actions have irreparably harmed DePuy Partnership's goodwill in Tarrant County, Texas. Mieyr used the relationships he developed at DePuy Spine's and DePuy Partnership's expense for his own benefit, in violation of the Agreement he made only one year ago.

13.  If Mieyr is not enjoined, DePuy Partnership will continue to suffer irreparable harm because, among other things, it will be deprived of the opportunities to sell new products and to increase sales to its existing customers, and to seek to the remedy the damage to goodwill that Mieyr has already caused.

14.  For example, DePuy Spine recently received Food and Drug Administration ("FDA") approval to market an artificial disk known as Charite. The FDA has not approved any other artificial disc for sale. If Mieyr continues to sell competing spinal implant products in Tarrant County, he will be in a position to undermine or explain away the benefits of the Charite product (as well as other products distributed by DePuy Partnership) to potential DePuy Partnership customers. When he does do so, Mieyr will be able to trade on the information he received while acting as a distributor for DePuy Partnership and the perceived credibility flowing from that former role.

15.  Mieyr's actions have caused and will continue to cause substantial, ongoing, irreparable harm to DePuy Partnership.

Signed under the pains and penalties of perjury on this 17th day of February 2005.

Jack Carlson

1405006.1

CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon the attorneys of record for each party by mail / by hand
Date: 2/18/05

- - 4

Rob's case commissions                                                                 Page 1 of 1

## Carlson, Jack [DPYUS]

**From:** John Mieyr [jspine@comcast.net]
**Sent:** Wednesday, December 22, 2004 7:55 AM
**To:** 'Carlson, Jack [DPYUS]'
**Subject:** RE: Rob's case commissions

Jack:
As I told you on Monday I will pay Rob Walker his due commissions from any cases that Dr. Halliday has performed at All Saints Hospital. I spoke with Rob on Monday evening and communicated this to him as well. He told me that his commission rate with Susan is 8% however when he worked for me I used to pay him at the rate of 9% and told him that I would do the same again. As far as any communication to Susan is concerned you can feel free to forward this on to her however, I will not be sending any copies to her directly.
JOHN

---

**From:** Carlson, Jack [DPYUS] [mailto:JCarlson@DPYUS.JNJ.COM]
**Sent:** Tuesday, December 21, 2004 7:55 AM
**To:** 'jspine@comcast.net'
**Cc:** Milner, Priscilla [DPYUS]
**Subject:** Rob's case commissions

John: Following up our discussion yesterday I would request that you send me a acknowledement letter confirming your intent to pay Rob Walker commissions for his case coverage for Dr Halliday at All Saints Hospital.

I would expect you to send this letter to Rob with a copy to Susan Brownell and me.

Please acknowledge commission dollar amount and date that you intend to pay Rob.

Should you elect not to complete this request I will make the arrangements with Sales Admin to have the commissions withdrawn from your final check.

Please contact me directly should you have any questions concerning this request.

Jack Carlson
---------------------------------

Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)

12/23/2004

## Carlson, Jack [DPYUS]

**From:** Carlson, Jack [DPYUS]
**Sent:** Monday, November 29, 2004 10:11
**To:** John Mieyr
**Subject:** RE: Cases With Dr. Halliday

-----Original Message-----
**From:** John Mieyr [mailto:jspine@comcast.net]
**Sent:** Monday, November 29, 2004 9:33 AM
**To:** 'Carlson, Jack [DPYUS]'
**Subject:** RE: Cases With Dr. Halliday

Jack:
I resent the fact that you consider me unwilling to work with you on these cases. I think that you misunderstood my message. [Carlson, Jack [DPYUS]] John I didn't misunderstand you at all. I'm trying trying to resolve this to all parties satisfaction and the most important the customer who happens to be a surgeon. I am more than willing to allow Rob to cover these cases however, since I am in the 25% money am not willing to allow this revenue to go to Susan's territory. [Carlson, Jack [DPYUS]] This revenue will be going to Susan because she has the quota for Dr Halliday. You will also get the revue but I will adjust your quota by that same amount. I will pay Rob his commission for these cases and the coverage will be seamless for Dr. Halliday. I don't think that you have been listening to me when I tell you about similar situations occurring with my doctors when they do cases over at Harris.[Carlson, Jack [DPYUS]] John I have been listening to you however I hear and see nothing but threats and lack of flexibility initiative from you. In fact just this morning Dr. Hubbard scheduled a case over at Harris and called me with the information. I reminded him that I do not cover Harris and that is Rob's territory, upon getting that info he cancelled the case. Jack, this has been going on all year since I lost Harris. When my surgeons (Dr. Mitchell, Dr. Hubbard, Dr. Bechtel), do cases over at Harris, they use Danek since I am unable to cover the case. I do not call you or e-mail you whining every time one of my docs operates at Harris and I don't get the case because they won't work with Rob. Yes DePuy loses the revenue but this is a territory decision that DePuy made and I don't call crying everytime one of my surgeons operates at Harris. Furthermore, if you want to adjust my quota to reflect Dr. Halliday's business at All Saints I suggest that you can take out of my quota Dr. Mitchell, Dr. Hubbard and Dr. Bechtel's business that they do over at Harris and add that to Susans. Overall I think that you would find the numbers to be a wash.[Carlson, Jack [DPYUS]] My position is clear on what we're going to do with Dr Halliday's cases at All saints. This discussion is over.

JOHN

---

**From:** Carlson, Jack [DPYUS] [mailto:JCarlson@DPYUS.JNJ.COM]
**Sent:** Monday, November 29, 2004 9:12 AM
**To:** jspine@comcast.net
**Cc:** Milner, Priscilla [DPYUS]; Sbrownell@spineconsultantsinc.com
**Subject:** RE: Cases With Dr. Halliday

John: I'm in receipt of your email and your position on the Dr Halliday's cases at All Saints Hospital.
I disagree with your decision and obvious unwillingness to work with me to resolve this customer request to service her cases. Therefore you must pay Rob for the case coverage you will duplicate his commission percentage agreement that he currently has with Susan Brownell for similar cases. Through a copy to Susan I will have her validate his commission percentage. Along with that I will adjust your current quota to include the net billing of these cases. This adjustment will take place on your next commission statement once we validate case net billing..

Jack Carlson
  -----Original Message-----

11/29/2004

## Carlson, Jack [DPYUS]

**From:** Carlson, Jack [DPYUS]
**Sent:** Monday, November 29, 2004 9:12 AM
**To:** jspine@comcast.net
**Cc:** Milner, Priscilla [DPYUS];
**Subject:** RE: Cases With Dr. Halliday

John: I'm in receipt of your email and your position on the Dr Halliday's cases at All Saints Hospital.
I disagree with your decision and obvious unwillingness to work with me to resolve this customer request to service her cases. Therefore you must pay Rob for the case coverage you will duplicate his commission percentage agreement that he currently has with Susan Brownell for similar cases. Through a copy to Susan I will have her validate his commission percentage. Along with that I will adjust your current quota to include the net billing of these cases. This adjustment will take place on your next commission statement once we validate case net billing..

Jack Carlson

-----Original Message-----
**From:** Johnson, Kathy [DPYUS]
**Sent:** Monday, November 29, 2004 8:46 AM
**To:** Carlson, Jack [DPYUS]
**Subject:** FW: Cases With Dr. Halliday

Jack:
Until Dec 31 I will need to be paying Rob Walker and the revenue will need to be credited to territory 572. Anything less is a blatant breach of contract. Sorry, but I just cannot agree with what Susan is asking for until I am either part of her organization or gone altogether.

John

---

**From:** Johnson, Kathy [DPYUS] [mailto:KJohns30@DPYUS.JNJ.com]
**Sent:** Wednesday, November 24, 2004 2:35 PM
**To:** John Mieyr (E-mail)
**Subject:** FW: Cases With Dr. Halliday

-----Original Message-----
**From:** Carlson, Jack [DPYUS]
**Sent:** Wednesday, November 24, 2004 12:56 PM
**To:** 'susan brownell'; Johnson, Kathy [DPYUS]
**Subject:** RE: Cases With Dr. Halliday

Kathy: please email this John Mieyr. He doesn't check his depuyspinesales email.

John: Please see comments from Susan below. This will have to be covered by Rob Walker. We will manually adjust so that Rob is paid through Susan along with revenue attainment is credited to her territory .
I will copy you on all correspooindance of these adjustments so you know the details.

JC

-----Original Message-----
**From:** susan brownell [mailto:sbrownell@spineconsultantsinc.com]
**Sent:** Wednesday, November 24, 2004 11:59 AM
**To:** Carlson, Jack [DPYUS]

11/29/2004

Page 2 of 2

**Subject:** Cases With Dr. Halliday

Jack: Dr. Halliday just booked two rather large cases for the second week of December at All Saints. Both of these cases would have gone to Danek, but she is gradually turning over more business to us...almost $80K this month alone. As you know, she prefers to work with Rob Walker.

How should we handle this?

Susan Brownell
sbrownell@spineconsultantsinc.com
SPINE CONSULTANTS, INC.
7502 Greenville Avenue
Suite 660
Dallas, TX 75231
469/232-9400 - office
469/232-9405 - fax

11/29/2004

**Carlson, Jack [DPYUS]**

**From:** Carlson, Jack [DPYUS]
**Sent:** Wednesday, December 22, 2004 8:18 AM
**To:** 'jspine@comcast.net'
**Subject:** Re: Communications

John
Rec'd your email on your pending departure for vacation.
Please email me on your backup plan for case coverage for any cases that come about during your vacation.
We are prepared to support the case needs during your absence.

Jack
------------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)


-----Original Message-----
From: John Mieyr <jspine@comcast.net>
To: 'Carlson, Jack [DPYUS]' <JCarlson@DPYUS.JNJ.COM>
Sent: Wed Dec 22 08:50:53 2004
Subject: RE: Communications

Jack:

As you may remember I will be leaving for vacation on Thursday morning and will be unavailable for a call with you. I will be available once again on Jan 3 if you wish to pursue any discussions at that time.


JOHN



From: Carlson, Jack [DPYUS] [mailto:JCarlson@DPYUS.JNJ.COM]
Sent: Tuesday, December 21, 2004 10:10 AM
To: 'jspine@comcast.net'
Subject: Communications


John
In the best and professional interest I would like to have a discussion with concerning your personal communication to surgeons and hospital staff members concerning your upcoming discontinuation of DePuy Spine representation.

I will plan to speak to you on thursday so we can coordinate this communication for consistentcy and accuracy.
Please email me with a time that is convenient for this call.

Jack Carlson
------------------------------
Sent from my BlackBerry Wireless Handheld (www.BlackBerry.net)