UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-10270-RGS

| | |
|---|---|
| DEPUY SPINE HOLDING CORP., As It Is General Partner Of DEPUY SPINE SALES LIMITED PARTNERSHIP, ) ) ) ) | **MEMORANDUM REGARDING DEFENDANTS' "COMPROMISE" PROPOSAL** |

DEPUY SPINE HOLDING CORP., As It  )
Is General Partner Of DEPUY SPINE  )
SALES LIMITED PARTNERSHIP,         )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )
                                   )
JOHN MIEYR and TRINITY             )
SPINE, INC.,                       )
                                   )
        Defendants.                )

**MEMORANDUM REGARDING
DEFENDANTS' "COMPROMISE"
PROPOSAL**

## I.    WITHOUT PROTECTION FOR DEPUY PARTNERSHIP, MIEYR'S "COMPROMISE" GUTS THE AGREEMENT.

At a hearing on Friday, February 18, 2005, defendants John Mieyr and Trinity Spine, Inc. (collectively, "Mieyr") argued that they had made a "compromise" proposal by which Mieyr could continue to sell competitive products to four of DePuy Partnership's customers, Drs. Gray, Hubbard, Mitchell, and Sazy.  Three of these four doctors accounted for 80% - 90% of the business that Mieyr transacted on DePuy Partnership's behalf in 2004.  Second Declaration of Jack Carlson, ¶ 2.  Mieyr's "compromise" guts the plain language of the Agreement.

DePuy Partnership has argued that Mieyr's continued sales to DePuy Partnership's customers (including Drs. Gray, Hubbard, Mitchell, and Sazy) continues to cause it irreparable harm, notwithstanding their statements that they will not use DePuy Spine products.[1]  At the

---

[1] At the hearing, the Court suggested that DePuy Partnership could still compete by sending a different representative to these doctors.  But it could not compete on a level playing field: Mieyr has the advantage of the goodwill that DePuy Partnership built up and paid for over the past ten years and the mere fact that he now sells competitive products may cast a shadow on DePuy Partnership's products.  This is the gist of the cases cited by DePuy Partnership upholding restrictions on sales representative or employees contacting their former customers.

Hearing, the Court noted that DePuy Partnership may seek damages from Mieyr.  But even as to this group of four doctors, DePuy will have no ready way to calculate its lost profits, for they would be not merely Mieyr's actual sales to them, but would also include, *inter alia*, DePuy Partnership's lost opportunities with them, including their use of new products.  There is little doubt that if a preliminary injunction does not issue, Mieyr will argue in a damages arbitration that DePuy Partnership's damages are too speculative to allow recovery.[2]  It is to avoid such proof of damages difficulties that parties bargain for and courts enforce non-competition agreements.  *E.g.*, *Fortune Personnel Consultants of Boston, Inc. v. Hagopian*, 1997 WL 796494, at \*3 (Mass. Super. Ct. Dec. 30, 1997) ("damage to goodwill is likely to be irreparable in that, once it occurs, it cannot be undone and its financial implications are almost impossible to measure"); *see also, e.g.*, *INTMB, Inc. v. Town of Westborough*, 2004 WL 2345081, at \* 3 (Mass. Super. Ct. Sept. 29, 2004) ("It is this court's opinion that loss of a company's goodwill is inherently difficult to quantify in economic terms, and nearly impossible to restore once lost, thereby giving rise to irreparable harm."); *Stone Legal Resources Group, Inc. v. Glebus*, 2003 WL 914994, at \*6 (Mass. Super. Ct. Dec. 16, 2002) ("Moreover, in Massachusetts, the loss of goodwill has been recognized as being particularly hard to quantify, giving rise to the need for equitable relief.") (citation and internal quotations omitted); *American Stop Loss Ins. Brokerage Services, Inc. v. Prince*, 2001 WL 173178, at \*3 (Mass. Super. Ct. Feb. 20, 2001) ("In this Commonwealth, the loss of goodwill has been recognized

---

[2] At the hearing, the Court inquired (in effect) whether the Agreement was a non-solicitation clause.  Mieyr suggested that it was.  The Agreement in fact prohibits Mieyr from "directly or indirectly engag[ing] in the sale of Competitive Products in the Territory or accept compensation of any kind from any person or entity providing or engaging in the sale of Competitive Products."  The Agreement not only bars Mieyr from soliciting, but also from selling competitive products.  Mieyr's "compromise" rewrites the terms of the Agreement.

2

as being particularly hard to quantify in the damages assessment context. Accordingly, the need for equitable relief is more compelling where goodwill is at risk.").

Accordingly, if the Court remains inclined to create a carve out from a preliminary injunction allowing Mieyr to sell competitive products to Drs. Gray, Hubbard, Mitchell, and Sazy, then the Court should condition that allowance upon Mieyr escrowing the $200,000 that DePuy Partnership paid him one year ago in connection with executing the Agreement, and accounting for and escrowing his commissions on those sales, to insure that DePuy Partnership can recover them based on his unfair competition and unjust enrichment. (DePuy Partnership's profit on the sale of DePuy Spine products is greater than Mieyr's commission payments for such sales. Second Carlson Decl., ¶ 3.) Mieyr ought not be allowed simultaneously to have use of the money DePuy Partnership paid him and to breach the Agreement, and DePuy Partnership has a claim on any monies that Mieyr earns in violation of his Agreement, as sales to these four doctors would be.[3]

This result would provide some (although not its preferred or, in its opinion, adequate) measure of protection to DePuy Partnership and would allow Mieyr to continue his relationship with these four doctors, as he wishes. To allow Mieyr to breach the Agreement by selling to these doctors and to retain the commissions he earns would indeed be to reward him for his breach. DePuy Partnership believes that Mieyr's actions cause it irreparable harm, which by definition is not readily calculated, but at the least DePuy Partnership has an equitable interest in Mieyr's commissions earned through his unfair competition and which unjustly enriches him. If the Court fashions a preliminary injunction that does not extend to these four doctors, then the Court should also order that Mieyr escrow the $200,000 DePuy Partnership paid to

---

[3] The Court suggested that Mieyr's actions constitute a breach of the Agreement.

Mieyr and that Mieyr's commissions be escrowed until DePuy Partnership can realize its interest in them.

At the hearing Mieyr claimed that the temporary restraining order was overbroad because it encompasses all of Tarrant County, rather than the specific accounts listed in Schedule B to the Agreement. Alternatively, although the defined territory is marked on Schedule B to the Agreement as Tarrant County, DePuy Partnership proposes as an alternative compromise that the preliminary injunction run only to the listed accounts in Schedule B, as Mieyr suggested.

                    DEPUY HOLDING CORPORATION, INC.
                    As It Is General Partner of DEPUY SPINE
                    SALES LIMITED PARTNERSHIP,


                    By Its Attorneys,



                    Joseph F. Shea (BBO #555474)
                    Eric P. Magnuson (BBO #643805)
                    Nutter, McClennen & Fish, LLP
                    World Trade Center West
                    155 Seaport Boulevard
                    Boston, MA 02210-9628

Dated: February 18, 2005


CERTIFICATE OF SERVICE
I hereby certify that on this day a true copy of the above document was served upon the attorneys of record for each party by mail / by hand
Date: 2/14/05

4